UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 06-313M-01 |
| | : | |
| v. | : | Magistrate Judge Alan Kay |
| | : | |
| ONOCHI ONWUEMENE, | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its counsel, the United States Attorney for the District of Columbia, hereby submits this memorandum in aid of the sentencing of defendant Onochi Onwuemene. As will be discussed below, the government moves for a two-level reduction in the offense level for defendant's acceptance of responsibility and then requests a sentence within the resulting Sentencing Guidelines range, that is, 0 to 6 months, deferring to the Court as to the appropriate sentence within that range, but not opposing probation.

### I. FACTUAL BACKGROUND

On August 21, 2006, defendant pled guilty, pre-indictment, to a one-count misdemeanor Information charging a violation of 18 U.S.C. §§ 2113(b) (theft from a federal credit union) and 2 (aiding and abetting). The charge addressed defendant's role in a scheme involving the depositing of stolen checks into an account at a federal credit union and the withdrawing of money from the resulting funds. After defendant pled guilty, he was released on his personal recognizance, in which status he remains. Defendant is now set for sentencing on January 19, 2007, at 10:00 a.m.

According to the Statement of Offense filed in this matter and the Presentence Investigation Report ("PSR"), at pages 3-5, ¶¶ 6-15, both of which were agreed to by the defendant, PSR, at page 5, ¶ 18, at all relevant times, the Bank-Fund Staff Federal Credit Union (hereinafter referred to as

"BFSFCU") located at 1750 H Street NW, Washington, D.C., was federally insured. On or about March 29, 2006 until on or about April 3, 2006, three stolen checks totaling approximately $34,385 were deposited into the account of two BFSFCU members. The owners of the account were defendant and his mother. The three stolen checks were courtesy checks issued to three different MBNA Bank credit card holders, none of whom were defendant or the other individuals whose actions are discussed in this Information and none of whom had given anyone permission to use the checks. Typically these checks are mailed to credit card holders to be used for whatever purpose the credit card holder desires. The three checks were returned to BFSFCU from MBNA Bank as they were listed as "stolen."

On or about March 29, 2006, a co-worker of defendant at a store in Rockville, Maryland (the co-worker is hereinafter referred to as "Individual #1) approached defendant about cashing checks for a friend named "Pee" (whose real name is Perry P. Biayeibo) who was a Nigerian citizen who could not open a bank account in the United States. Defendant agreed to cash the checks in exchange for a percentage of the funds. Individual #1 then gave defendant the first MBNA courtesy check for $9,640 made payable to defendant. Individual #1 took defendant's BFSFCU Debit card and Personal Identification number as insurance that defendant would not take all the money. Defendant deposited the check in his BFSFCU account at a branch located in Gaithersburg, Maryland.

On or about the following day, March 30, 2006, defendant was introduced by Individual #1 to "Pee" (later identified as Mr. Biayeibo) at a location in Prince George's County, Maryland. The three individuals then traveled to the BFSFCU credit union branch located at 2121 Pennsylvania Ave, N.W., Washington, D.C., to withdraw the funds from the previously mentioned check.

Mr. Biayeibo instructed defendant to withdraw $3,000 in cash and obtain a cashier's check for $4,950 in defendant's name. The three individuals then left the Credit Union and traveled to a First Cash Advance located in Washington D.C. Defendant entered the First Cash Advance and negotiated the cashiers check.[1] Mr. Biayeibo then told defendant to keep $1,600 for himself, give $500 to Individual #1, and Mr. Biayeibo would keep the remaining $2,850. At the end of the meeting, Mr. Biayeibo gave defendant a second courtesy check from MBNA Bank for $9,895 made payable to defendant.

On or about April 3, 2006, defendant deposited the second MBNA check into his BFSFCU account in Gaithersburg, Maryland. On or about the next day, defendant met Mr. Biayeibo at the BFSFCU at 2121 Pennsylvania Ave, N.W., Washington, D.C. From the funds available from the deposit of the second MBNA check, defendant withdrew from his account at BFSFCU cash and a cashier's check for $4,200. From those funds, and based on the agreement between them, defendant gave Mr. Biayeibo $6,895 and kept the remaining $3,000 for himself.

On or about later the same day, Mr. Biayeibo had defendant meet him at the White Flint Mall and gave defendant the third MBNA Bank courtesy check made payable to defendant for $14,850. Mr. Biayeibo instructed defendant to deposit the check into the Gaithersburg, Maryland, shared branch of BFSFCU account, which defendant did.

Following the deposit of the third check by defendant at the BFSFCU, the credit union became aware that the three checks were in fact stolen. The credit union contacted the United States Secret Service.

---

[1] The surreptitious nature of the withdrawal of the funds helps shows the knowledge of the defendant and his co-participants in the fraudulent and wrongful nature of this scheme.

On or about April 6, 2006, defendant admitted to the Secret Service his involvement in the this scheme to deposit the stolen checks into his BFSCU account and then withdraw funds from the BFSCU based on those deposits.[2]  Because the BFSCU had become aware of the fact that the MBNA checks were stolen, no funds were withdrawn by defendant from the funds resulting from the third check that he deposited.  At the time of the plea in this matter and on the record, defendant admitted that he knew the checks were stolen at the time he cashed the checks.

On June 23, 2006, Mr. Biayeibo pled guilty to a felony Information charging a violation of 18 U.S.C. §§ 1344 (bank fraud) and 2 (aiding and abetting).  PSR, at page 3, ¶ 5.  He is in a fugitive status currently with a bench warrant pending.  *Id.*

## II.  UNITED STATES SENTENCING GUIDELINES ("USSG")

The Probation Officer believes, and the United States concurs, that the defendant's total offense level under the USSG after the two-level decrease for acceptance of responsibility is 8, his criminal history is I, and his USSG range is 0 to 6 months of imprisonment.  PSR, at page 11, ¶ 63; *see id.*, at page 5-6, ¶¶ 19-29 (Offense Level Computation).  According to the PSR, the defendant presently falls within Zone A of the Sentencing Table.  *Id.*, at page 12, ¶ 69.  A Guidelines sentence in Zone A can be satisfied by a sentence of probation, imprisonment, or something between those two alternatives.  *See id.*  Finally, there are no factors under 18 U.S.C. § 3553(a) in this case that are not already taken into account adequately by the USSG.

## III.  RECOMMENDATION

Defendant pled guilty to a misdemeanor offense based on his role in this fraudulent check

---

[2] The government will file an additional under seal pleading to discuss some additional, non-public information relevant to the facts of this matter.

scheme. He did not initiate the scheme, but when it was presented to him, he willingly participated and profited from it. Based on his background and the opportunities that he has had in his life, as set forth in the PSR, at pages 6-9, ¶¶ 33-50, defendant should have known better than to have done so and apparently only did so because of the money he could make from the fraudulent scheme.

On the other hand, and to his credit, defendant quickly admitted his guilt in this matter when confronted by the Secret Service and pled guilty pre-indictment.

In this case, the government accordingly is requesting that the Court sentence defendant within the USSG range, as set forth above, that is, 0-6 months. *See* United States v. Dorcely, 454 F.3d 366, 376 (D.C.Cir.), *cert. denied*, 127 S.Ct. 691 (2006) ("a sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness"). Per the plea letter in this matter, the government does not oppose a sentence of probation for the defendant. Plea Letter, at pages 2-3, ¶ 5; *see* PSR, at page 3, ¶ 3. The government would defer to the Court as to the length of that probation, only requesting it be within that called for by the Sentencing Guidelines, that is, at least one year, but not more than five years. PSR, at page 12, ¶ 69. Restitution has already been paid by defendant's mother, so it is no longer an issue in this matter. PSR, at page 5, ¶ 16; page

11, ¶ 61; and page 13, ¶¶ 78-79.  Finally, defendant does not appear to have the ability to pay a fine.  PSR, at page 11, ¶ 61.

                                                        Respectfully submitted,

                                                        JEFFREY A. TAYLOR
                                                        UNITED STATES ATTORNEY
                                                        D.C. BAR # 498610

                                                        / s /

By:                                                _____
                                                        DANIEL P. BUTLER
                                                        D.C. Bar #417718
                                                        ASSISTANT U.S. ATTORNEY
                                                        555 4th Street, N.W.
                                                        Washington, D.C. 20530
                                                        (202) 353-9431
                                                        Daniel.Butler@usdoj.gov